William Miles Byrd, Counsel, Florida County, U.S. Financial Corporation Douglas B. Keller, Counsel for Applebees John J. Alcantara, Director, Center for the Custody Ian Mark, 16th District, LLC  Do you wish to reserve time? Yes, Your Honor. How much? Five minutes, I guess. Alright, thank you. We'll see how it goes. Alright. You may proceed. Judges, and may it please the Court, my name is William Byrd, and I am here on behalf of Rest Financial Corporation in the appeal of two matters from the man's duress in an adversary proceeding for approximately $425,000 for damages allegedly incurred as a result of a violation of the automatic stay. That's what the judgment says. In fact, it's based on a finding of contempt. And the whole problem in this case is that it appears from reviewing the transcripts of what occurred below the matter was treated as if it were a complaint for damages under 362K when in fact it was a contempt proceeding. And it makes a huge, huge difference in the outcome. Let's walk through that really fast. To find contempt, we're going to have to find that there was a definite and clear order of a court, right? Yes, Your Honor. And the automatic stay qualifies as that, at least conceptually, right? It does, Your Honor. So then it's a question of what's the particular order, right, that was allegedly violated, right, if there is one. And there really is. What we're talking about here is potentially some confusion between an order that granted relief from stay and some prior occurrences, right? Yes, Your Honor. Okay. And then the next question, just to get them all out there, the next question is, if we're in a contempt mode, was it clear that the party's actions violated that order slash automatic stay, correct? Yes, Your Honor, but I think there's more than that under Emmert v. Taggart. The recent decision by the Ninth Circuit. No, I understand. I've read it. Okay. What does that add for you? What it adds, Your Honor, is that if Ress had a good faith belief that its actions did not violate the stay, even if that belief was unreasonable, contempt will not lie. Then let's just jump to the punchline here. What was the subjective good faith belief that Ress had? There was an order when Point Center Financials Bankruptcy, or I'm sorry, when the Preserves Bankruptcy case was converted to Chapter 7. Right. There was an order entered in the conversion order that granted Point Center Financial relief from stay. Right. For property, but that was other property though, wasn't it? Wasn't that property that was already reconveyed? Well, Your Honor, the issue that came up, the order granted relief from stay to Point Center Financial had a single note and a single deed of trust. The deed of trust was originally against, I think, about say 1,300 acres of property. The note and deed of trust provided for reconveyance of certain conditions, partial reconveyances, if certain conditions were met. No, I understand that the argument was that wasn't done properly, right? The reconveyance. Okay. But what you're looking, here's what I'm trying to figure out where the subjective good faith belief would come from. You've got an order that generally says you have relief from stay, and those orders typically wouldn't say anything more, right? Because it's not, you would be entitled to think it's not the bankruptcy court's job at that point to say what that means on a state law basis, right? But in the meantime, somebody's looked at a title report and there have been some reconveyances, right? Correct, Your Honor. And at the same time, pretty much the same time, a letter comes in saying, gee, you know, there's some problems here because there's a reconveyance, correct? After the notice of default was recorded. Well, how much after? Oh, I think about two weeks. Okay. Then a letter came in from the attorney, then attorney for the debtor, Jeffrey Broker. Right. Ress, which if we could put it in context exactly what Ress's role here is, the beneficiary. That is what it's stupefying about. This isn't even their money. No. This is what's stupefying. Why they could have done so to help you. Okay. So give me the context. Okay, Your Honor. Points that are financial. I understand. I know all that. I know all that. Ress was hired in the process of foreclosure in late December or late November, early December. Yeah. Well, actually, they're an agent of the trustee, right? Okay, gotcha. So they're quite removed from any monetary interest in this. So can I just I'm not trying to interrupt. I'm trying to get to a quick answer. What every one of those cases about subjective good faith belief ultimately relies on is something that is either within the knowledge of the particular of the alleged violator or contemnor, right? Or some other action that somebody else takes that confuses them in some fashion. Or some when you go all the way back to Dyer, the question of whether somebody who's not experienced a bankruptcy would know the 362H says what it says. How do you fit that within this fact pattern for me? Because that's where I'm having some trouble. Okay. Initially, when Ress is hired, it's revised, learns that relief from stay has been granted. It's aware of the bankruptcy. Okay. It sees, it pulls a preliminary title report, a trustee sale guarantee, sees the recordation of the partial reconveyances. It goes back to national financial lending, which has the same ownership as Point Center Financial. I think the same employees. Both entities were owned by Daniel Harkey, 100%, and he was the president. Ress, the principal of Ress, Bruce Beasley, goes back and says, what's the deal with these reconveyances? And he's told by the attorney for Point Center that they're invalid. They don't comply with the California Subdivision Map Act. Go ahead and proceed. Yeah, that's, you know, that's like saying in a perfect world I'd have a solvent party to claim an indemnity against, right? That's not an excuse for whether you violate the stay. Those are two very different concepts in my mind. I'm not saying they didn't violate the stay. Okay. I'm saying it's not contemptuous. Okay. It doesn't meet the standards for contempt. And so what, I'm sorry, go ahead. Did she make the, reading this transcript is very difficult. That's a problem for everyone in this case. It is a very difficult transcript to follow. What was her finding on the state of mind that was required? She didn't really make a finding, Your Honor. She said, as we've indicated in our brief, we think the bankruptcy court made multiple errors, one of which was applying the wrong burden of proof. She said the only thing that needed to be proved by clear and convincing evidence is that stay was violated. And nothing else did. And I think that's errors of matter of law. Well, we'll get to that. But on this particular issue, which is what you started with, state of mind, it appears that she, from the transcript, that she at one point says it has to be reasonable, which would be inconsistent with Taggart, as you pointed out. At other points, however, she talks about bad faith and the kind of things that would bring it within Taggart. And a lot of that, Your Honor, if you look at it, it seems to be addressed to the fact that Ress was defending itself in the complaint. It was, I mean, there's language in there that you still refuse to admit you violated the state. Well, Ress wasn't supposed to defend itself. I mean, Ress, the argument is made in the appellee's case that the litigation was necessary to protect property of the estate. That's not true. Ress, from day one, said we'll stipulate any, any injunctive relief the parties want. We don't even care about the first or third claim for relief. We don't want any money sanctions imposed against us. And Ress repeatedly said that. Ress filed a declaration of defense. So throughout the entire proceeding, Ress said, we don't really want to be here. And the whole thing was about money. All the damages. There were no damages incurred by the estate. The damages are all attorney's fees incurred in prosecuting this lawsuit against Ress. Let me just clarify, because I read the record slightly different from you. Two letters are sent to Ress. They ignore them. Well, let me just play along with you for a second, okay? They certainly didn't respond by saying, gee, let me go to the bankruptcy court and see what's going on here, right? They didn't do that. Okay. In late March, early April, a trustee files an action for injunctive relief and gets a TRO, correct? Right. I assume there was a hearing set about a month later on a preliminary injunction? There was, Your Honor. Okay. And it was before that hearing that the NOD was rescinded and this statement of non-monetary participation is filed? Correct. Okay. Ress first learned of the bankruptcy court's ruling valuing the collateral of the debtor, indicating that it only consisted of 636 acres when it was served with a complaint. And it's undisputed. And it later files a motion for summary judgment. They were defending, Your Honor, on a complaint against them for money. Yeah. They were not threatening to do anything. They were only... Well, no, they had rescinded an NOD. They hadn't rescinded the right to file another one, right? They had no right to act independently. They were just an agent. Well, okay, that's another issue. That's a different issue. And at that point, Point Center Financial had filed its own bankruptcy. By the summer, a trustee had been appointed for that, Mr. Gropstein, so Point Center was not in any position to instruct Ress to do anything. And when Ress was served with a complaint, it's undisputed. They told NFL and Point Center Financial, we will not proceed with a foreclosure. And that's undisputed. Now you're at your five minutes. Do you want to continue or reserve? I'll reserve. Thank you, Your Honor, unless anybody has an urgent question. Well, we'll get to it. We'll get to it, I'm sure. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is Dugan Kelly and I have the privilege of representing the U.S. trustee, John Menchaca and Beaumont 1600 in this proceeding. Your Honors, there was ample evidence that Judge Blubahn considered at the trial court level that demonstrated that there was a violation of the automatic stay. Is anyone disputing that? Yes, Your Honors. I don't think he is today. No, he was not. But the NFL, Your Honor, which is one of the other defendants in this case, has never taken the position that they didn't have the right to do what they did. And in fact, the very first argument always advanced by the defendants, including Reese, was that the reconveyances issued by the court, Judge Blubahn, were invalid. And that as a result, the 13 and 31 acres should be always reconstituted for purposes of them being able to foreclose. Well, can I clarify something? She didn't issue the reconveyances, that happened pre-petition, but as part of her evaluation order, she acknowledged them, correct? That's correct. So she said what I'm valuing here is not the 13 and 31 acres, it's 636 or whatever, okay. That's right, Your Honor. But aren't there, I mean, don't you get out of the transcript a couple of problems with burdens? I mean, didn't she, I mean, she said more than one thing with respect to the knowledge requirement, but didn't she say, I don't think that requires clear and convincing evidence? And wouldn't that be a mistake? No, respectfully, Judge Blubahn, I've appeared in front of her on a number of occasions. She's a very prudent jurist, but she also, she goes through a thought, her open thought process when she's on the bench. And so she actually allows litigants multiple times to persuade her. Her mind is not fixed. And so there are comments that are reflected in the record, as I understand, where she's wrestling with the factual disputes that are being raised by the lawyers. But where did she ever say clear and convincing evidence is the required standard, and I'm making my determinations under a clear and convincing evidence standard? And I mean, this transcript, I agree, I have a tendency to do the same thing on the bench. So I applaud her, but I can't find that finding. Doesn't mean it's not there, but I can't find that. And I was one of the lawyers that was arguing in front of Judge Blubahn at the trial court level, Your Honor. She clearly demonstrated, she did not agree that there had to be a mens rea, an intentional thing, but she concluded that there was clear and convincing evidence of not only a violation of the stay, but that... Where did she say that? She said that in the transcript, Your Honor. Where? Because she said very clearly, I mean, at other places she said very clearly that the burden of proof was preponderance. Right. It's referenced in our brief, Your Honor, on pages 26, 27, and 28, when she's discussing exactly what it is that Mr. Beasley does. I don't know if she uses the words clear and convincing itself, but the court was aware of the fact that something that counsel doesn't even allude to in his case is the simple fact that as of November and December of 2012, when Reese is actually hired, they were aware of, at the time that they were hired, that there was property that had already been reconveyed pursuant to the trustee's sale guarantees. So he mentioned it in his argument. He did. Absolutely. And Exhibit A to that. So as to the court knew at the time of the trial that we not only have one and two letters before they essentially do the notice of trustee sale, but we have this title report that clearly says there's a bankruptcy proceeding. I'm sorry to interrupt you. May I go back to Judge Taylor's question? Because I have the same one. I remember distinctly from the transcript her saying, I don't think clear and convincing necessarily applies to anything other than was there a stay violation. She then says at a later point, well, I'm going to apply a slightly higher burden with respect to the knowledge requirement because the order itself might not have told you everything you needed to know. But what I don't hear, and I don't think my colleagues have either, is what's the punch line? Where does she make a finding saying under something like clear and convincing evidence, I find there was knowledge and I don't have the exact. There was a very detailed when we submitted pre-trial factual findings and conclusions of law. Both parties did. That was part of that. I don't have a off the top of my head a citation to the exact record. But as the court notes, part of the factual determinations that the court made at the trial court level and the conclusions of law that she reached there were extremely detailed in connection with what Mr. Beasley knew about prior to rescinding the notice of trustee stay. Okay, so you would tell us that those are in the record. We don't have to do fact finding. That was done even if the burden of proof might have been misstated at some point at the end of the day, the evidence is there. Yes. That's at your position. Okay. But you would also concede, would you not counsel that the proper standard is clear and convincing? Well, I would, Your Honor. But the facts that were presented to Judge Bluban that are undisputed is that Reese violated the automatic stay. They were on notice of not only just innuendo or arguments of partisan counsel, they could have looked, this was a self-admitted expert in the area of judicial foreclosures in the bankruptcy context. So this is not an innocent party that didn't know what was going on. But that would be a factual finding, right? That is a factual finding. He was not an unsophisticated party. He was innocent is the whole question. Because I think, and the reason I keep saying I don't think stay violations are at issue is I don't think that's really the, there are multiple things that have to be determined here. And the bare bones fact of there being a stay violation, I think she found she had to find clear and convincing evidence on that. So I don't think that's your problem if you have one. I think it's potentially the other point. So I would just urge you to stay away from stay violation and focus on other issues. So I think it's the trustee's position that the crux of the case, when you look at what actually happened in this case, was that the NFL and Reese were in lockstep. They were in lockstep throughout the entire adversary proceeding. They, I respectfully disagree with my colleague who argued that essentially they waved the white flag immediately. They filed their own cross motion for partial summary adjudication. And one of the very first arguments that they advanced were that the partial reconveyances were invalid, thereby allowing them to do what they did at every turn, whether it was pre-trial dispositive motions, motions in limiting, the trial brief, even at the time of the adversary proceeding when you read the record and the testimony of Mr. Beasley, he is attempting to justify essentially what he did. So this is somebody that knew what he was doing. Let me ask you, I want to make sure I come back to the reasonable or unreasonable good because I think it's important as well. But in this context, what Judge Bluban seemed to be saying was since this all emanated from an action to obtain injunctive relief to prevent something that was a violation of the stay, everything that came thereafter necessarily is part of the same action and is thereby compensable. Let me give you a hypothetical. What if instead of the trustee filing an action, what if Reese would have come in and said, look, we think there's some uncertainty here. We're going to file a debt relief action. And what if the same issues would have been litigated and the estate would have taken the position that, look, what Judge Bluban said years ago is simply it's a done deal, can't be collaterally attacked, we win. Would the estate expect to have its legal fees covered in that kind of a dispute? I think that that would have been an entirely different situation. I mean, so what is it that gives you the right to the fees? Is it the issue or is it the way it came up? It's the way that it came up and it's the positions of the parties that they were advancing throughout the course of conduct. But you included the debt relief action. I mean, this isn't simply a motion for sanctions based on relief from stay. And we haven't talked about the adversary proceeding versus motion piece, and I don't think that's really where we want to spend our time today. But you asked for declaratory judgment on a legal issue. They defended. And I share my colleague's question, concern about don't they have a right to defend? If you could sanction them, you could have given a 9011 safe harbor notice. And if there was a frivolous position they were taking, and get your fees that way. But I'm troubled with the, not by there being a state violation, not by there being an a state violation necessarily, but the quantum of damages and the point that there was a legal issue here. It had to be decided. Did they simply have to say, because of the automatic stay, we can take no legal, we can't defend, we have no legal position we can take? Well, with all due respect, that's the position that they took prior to the filing of the lawsuit. So in other words, the trustees' actions were in direct correlation to their position. I apologize. And then you filed the lawsuit, and it included the declaratory relief action. Yes, Your Honor. That's the question is, are we going to, the American rule, like it or not, is what it is. You initiated litigation to resolve a legal issue. You've shifted the fees to them. The only way to do that is as a state violation, and I'm just having some trouble seeing why that works. Because the court said, hey, if your argument is, at the time of trial, Reese wanted to have it both ways. One, they wanted to say, hey, we'll be willing to offer you a non-monetary injunction. Meaning, whoops, we made a, we breached, or we violated the automatic stay, but we're not willing to compensate the trustee for any of the damages associated with having to litigate the automatic stay. But in the same vein, Your Honors, Reese and the NFL wanted to go on the affirmative and attack the reconveyances so that the collateral could be coalesced again. Couldn't they have done that, though? Couldn't they have done that in another context? I mean, isn't that what my colleagues are asking? Couldn't they have just done that with their own lawsuit? They could have, if they wanted to. I mean, isn't the problem in some ways, Judge Blubin treating this as if it's, well, the arguments you're raising really are dead on arrival, because I did issue this order years ago. It's too late to attack it. And by the way, I'm not sure they would have been aggrieved for appellate purposes anyway. But isn't there argument that this really is just so meritless that I'm going to impose fees for that? I mean, it's sort of confusing Rule 11 in contempt in some ways, in my view. And I'm having a hard time figuring out what the standard ought to be under those circumstances. Respectfully, the trustee's position that it is not meritless, the trustee's position is this piece of property was worth, at the time of the bankruptcy filing, over $100 million. No, no, what I'm suggesting is what Judge Blubin said, is the defense of Reese was without any merit because she had entered an order years ago. And the obligation would have been to attack that timely then. That not having been done, there really is no legal attack on that. It is what it is. So, I mean, her position seems to be that persisting in this is problematic, which sounds Rule 11-ish to me, as opposed to contempt. It does sound that way, Your Honor. However, her Honor gave Reese multiple bites at the apple. And I know we've already talked about, we've already discussed this, but there were numerous opportunities for them to go this way. They chose the path that they wanted to go because it was beneficial. One of Your Honors asked the question, why would Reese essentially do this? The reality, the honest answer to that is that Reese was in bed, financially speaking, with both PCF and the NFL. They were a professional trustee handling lots of transactions for this particular defendant. It wasn't a situation of them being an unsophisticated partner. Can that give them a subjective good faith belief that what they're doing doesn't violate the state? No, Your Honor. Let's talk about that because what Judge Blubahn said was it has to be reasonable. And I don't think that's what Taggart says. The cases say even an unreasonable subjective good faith belief can be excusable, right? They do, Your Honor. However, in this case, when you look at the totality of the record, the specific factual findings that Judge Blubahn made, there was not in the trustee's position nor the court's position a reasonable good faith belief. There didn't have to be. There didn't have to be. I understand. But that's one of their arguments, Your Honors, that they acted with a reasonable good faith belief. Well, that's not a standard they have to meet. So the question is, is there a subjective good faith belief in the way that Taggart and Dyer and Zilog talk about it? We don't believe so, Your Honor. Did she make the finding? That's really the question for me is more, how can I get into this record and find that finding? Right. The best place I would point Your Honors to would be the specific pretrial findings of fact and conclusions of law that were very detailed. These were in fact the parties, including Reese, submitted those to the court for her consideration. So those are stipulated. Yes, Your Honor. Okay. I see my time is up. Thank you so much. Thank you very much. Nice job. Thank you, Counsel. Not that we've given you any ideas or anything. My colleague, Your Honor, pointed to their brief as far as, with a quote extensively from some of Judge Blubond's statements, and one of them jumped out at me at page 28, where Judge Blubond was talking about the letter that Mr. Broker sent to Ress in December after, about two weeks after the notice of default was recorded. Judge Blubond says, so it seems to me here that although Mr. Broker's letter doesn't tell him about the court's orders, what it does say unambiguously is there is an automatic stay still here. And I think when you get a letter like this, if you don't then pursue an investigation and look at the docket, that you're proceeding at your discretion, that's okay. That, Your Honor, is 100 percent contrary to Taggart. Ress went to its principal, NFL, jointly owned by PCF, and the allegation by counsel that they were in debt financially, yes, Ress is a... Just so we're clear, isn't Taggart the case about returning to the fray, where the debtor takes an action? No, no, no, Your Honor. Taggart is the recent decision by the Ninth Circuit Court of Appeals. I understand. But yes. The point of Taggart is somebody returns to the fray, right? The debtor does something. Right. Okay. The underlying case was returning to the fray. Right, yeah. But it is in Taggart where it says that even a subjective, I know, unfaithful, you know, Ress goes to its principal, says, hey, we got this letter from an attorney. PCF has been around for years, and so has NFL. And NFL did not vigorously defend. If you look at the docket, you'll see they dropped out. After Point Center Financial filed bankruptcy and the case was converted to a Chapter 7, I think right about that time, NFL quit providing Ress with a defense, as it was obligated to do, and they quit defending and left Ress to hang out the dry. Yeah. If it was so cut and dried, how do you incur $425,000 in attorney fees? Well, you go to a trial. That's the quick answer. Ress went to its principal, and the attorney for its principal said, he's wrong. Those reconveyances violate the Subdivision Map Act. We're going to proceed. Well, that was really, I mean, I don't, I don't, we haven't really gotten into value, but let's be honest. It probably was a subdivision map back issue. It certainly probably, the reconveyances probably had some, probably both sides have some huge problems with that property now, because if you don't have legal parcels and you're going to sell them, you can't refinance them. There's all sorts of things. But your client, your client's principal was asking just, we got a problem. Let's just exercise some self-help. They didn't use the right procedures. You know, so they win on the whole notion of, there wasn't a subdivision map back issue that, in my opinion, I didn't try it, but that just made everything go poof. It wasn't automatic. Some, you needed some judicial action. But you, and that's a problem for your client. I agree, Your Honor, but I respectfully submit, not from the standpoint of contempt. My client relied on the advice of counsel. It wasn't Ressa's counsel, it was its principal's counsel, but nonetheless, I think it was entitled to rely on that advice. And when it finally did learn about the bankruptcy court's order valuing the collateral, it said, we're not doing this anymore. We're not proceeding. And it rescinded the notice of default. Well, it did that about a month after it all came to light. The timeline is, the notice of default was rescinded 31 days after the complaint was served. And 56 days after the notice of trustees sale was recorded. And I think it's important to note, Judge Blubahn found that recording the notice of default did not violate the automatic stay. No, because the order by itself wouldn't have told you what you needed to know. Understood. But the notice of trustees sale did. And we had a whole period of 56 days that Ress was in violation of the stay. But they had to file a complaint. They went to a TRO hearing. All of that happened. Which Ress did not defend. Ress didn't appear. Ress didn't defend. And Ress made it clear. It's in the record. Ress made it clear from day one. We'll agree to any kind of declaratory relief you want. And to no avail. Thank you very much for your time. This will be under submission. Actually. Is this under submission? Actually. Sorry. Actually, this isn't under submission. You want to go ahead or do you want me to? I want you to. Okay. We uncovered a potential issue rate finality. And I think a notice slash order went out a few days ago. And the question is, although I think review of the record indicates that the slander of title issues were argued. And Judge Bluban, I believe, did make findings and come to a conclusion. We don't find a final decreed document that is sufficient to get us to finality here. There is no judgment that seems to dispose of the slander of title. And there's no order that seems to dispose of the slander of title issues. So we have issued an order, brought that to your folks' attention. I'm assuming that the thing to do, and we issued a limited remand with the order, would be to have Judge Bluban do what would be necessary to correct that condition. And then this can be under submission. Okay. All right. Well, first of all, there's no alternative suggestion, right? The suggestion is to go back to Judge Bluban and have her issue an amended judgment or an order. Your Honor, there was a joint pretrial order entered in this case that reserved all the issues. And it specifically provides that it supersedes the pleadings and it governs the trial. The judgment that was issued is the judgment that was issued. I think it resolves everything in the complaint. The declaratory relief portion, I think what the court indicated in its order, claim for relief 1A, 1B, and 1C, said were left open, those all have to do with the validity of the notice of default, the notice of trustee sale, and a declaratory relief that we had slandered title. I believe we're in agreement that those were rendered moot by the rescission of the notice of default as far as anything relating to the notice of default. It's clear from the court's findings that the judgment that was entered, even though it says that it's for damages, it doesn't even say for damages. It says for a violation of the state. We're working on a draft stipulation. If you do that and it's acceptable at that point, this could be under submission, but it won't be until then. I've sent a proposed stipulation to Mr. Clark, who is out of the country currently. When he returns, I think we'll be able to address it. And we'll timely respond to it. I just wanted to make sure I didn't take it under submission prematurely.
judges: Taylor, Lafferty, and Lastreto